```
                    UNITED STATES DISTRICT COURT
                 FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
_____
LUIS BOCOURT                       :
                                   :    No.
    VS.                            :
                                   :    JURY TRIAL DEMANDED
FRESH EXPRESS INCORPORATED         :
_____
```

## CIVIL ACTION COMPLAINT

COMES NOW, Plaintiff, by counsel, and complains of defendant as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, et seq. (hereinafter "Title VII"). and the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12111 et seq. (hereinafter "ADA"). This Complaint has been filed within 90 days after issuance of a Notice of Right to Sue by the EEOC.

### PARTIES

2. Plaintiff, Luis Bocourt, is a Black person who resides at 2241 Green Street, Harrisburg, PA 17110.

3. Defendant, Fresh Express Incorporated, is a corporation with a place of business located at 7505 Grayson Rd, Harrisburg, PA 17111, which is located within this Judicial District.

4. Defendant employs hundreds of people.

5. On or about May 20, 2019, plaintiff commenced employment with defendant as a Forklift Operator/Selector.

6. At all times during plaintiff's employment, his direct supervisor was Chuck Tilkens, Sr. (Caucasian).

7. In about October/November 2019, plaintiff made <u>a good faith complaint</u> to Human Resources that his Black coworker, Joseph Holmes, was fired by Mr. Tilkens for purportedly nodding off while operating a forklift and ordered him to undergo a drug test, but Mr. Tilkens excused a Caucasian worker named "Ron" for the same conduct.

8. Specifically, plaintiff explained to the Human Resources person that plaintiff reported to Mr. Tilkens in October/November 2019 that Ron was nodding off while opperating a forklift, but Mr. Tilkens merely told Ron to go home without having to undergo a drug test.

9. Human Resources never got back to plaintiff about this complaint.

10. On December 2, 2019, plaintiff commenced medical leave to undergo shoulder surgery and he returned on February 25, 2020.

11. On March 3, 2020, Mr. Tilkens ordered plaintiff that he had to undergo a drug test because he allegedly was involved in an accident with his forklift.

12.  Mr. Tilkens was not even in sight of plaintiff or his forklift before he approached plaintiff about an alleged accident which had never occurred.

13. Mr. Tilkens alleged that he heard from inside his office a bang 3-4 hours earlier in the day and alleged that plaintiff was in an "accident" even though he did not see what caused the alleged bang or who was operating a forklift at the time.

14. There was no damage to the forklift or any other company property or structure found by defendant and company policy is that a drug test is only required if: (1) there are damages to company property; (2) there is an injury; or (3) if an employee is thought to be impaired.

15.  No reason existed for plaintiff to have to undergo a drug test under company policy.

16.  Plaintiff told Mr. Tilkens that he refused to take the test because he believed he was being discriminated against and there was no reason for him to take a drug test because no accident occurred.

17.  Plaintiff told Mr. Tilkens that he did not make Ron (Caucasian) take a drug test when he was falling asleep while operating the forklift, so it was unfair to demand that plaintiff take a drug test based upon an accident that never happened.

18. Plaintiff told Mr. Tilkens that there was no damage to his forklift or anything else.

19. Mr. Tilkens responded that plaintiff would be fired if he did not take the test and he told plaintiff to punch out.

20. Plaintiff told Mr. Tilkens that he refused to take the test because "this is discrimination."

21. Plaintiff went home and called Human Resources the next morning and told them what happened, and the Human Resources representative refused to consider plaintiff's complaints and informed plaintiff that he was terminated for refusing the drug test.

22. Plaintiff was terminated and/or constructively discharged by Mr. Tilkens under the pretext that he had to undergo a drug or be fired based upon false reasons.

23. There was no accident, no injury, and no damage to anything.

24. Mr. Tilkens exhibited favoritism towards Caucasian workers by not requiring a drug test under the same policy.

25. Mr. Tilkens ordered a Black man, Mr. Holmes, to undergo a drug test for nodding off at the workplace pursuant to the drug testing policy but failed to enforce the drug testing policy against a White man, Ron, after it was reported to him by plaintiff that he was nodding off while operating a forklift.

26. Then Mr. Tilken misused the same policy to order plaintiff to undergo a drug test or be fired based solely upon a false claim that he was in an accident.

27. The actions of Mr. Tilkens created working conditions that were so intolerable that any reasonable person in plaintiff's shoes would have felt compelled to refuse drug testing.

28. Mr. Tilkens' demand that plaintiff undergo a drug test based upon a false claim that he was in an accident was motivated by discrimination.

29. Mr. Tilkens' demand that plaintiff undergo a drug test a few days after he returned from sick leave for shoulder surgery based upon a false claim that he was in a forklift accident was done in retaliation for plaintiff's good faith racial discrimination complaint made about him to Human Resources less than two months before he went on sick leave for shoulder surgery.

30. Mr. Tilkens' demand that plaintiff undergo a drug test based upon a false claim that he was in an accident was motivated by plaintiff's race and his perceived disability.

31. Mr. Tilkens treated the other Black workers including plaintiff disparately as compared to similarly situated Caucasian workers as described herein above.

32. Mr. Tilkens perceived that plaintiff was disabled because he underwent shoulder surgery that kept him out of work for nearly three months and for a medical condition that was not "minor."

33. Defendant and its decision makers demonstrated their discriminatory animus towards plaintiff by retaliating against him simply because he complained of what he believed in good faith to be racial discrimination, and because he was perceived to be disabled and because he is Black.

34. Defendant and its agents acted at all times material hereto with their authority to hire, fire and discipline.

35. Plaintiff was terminated and/or constructively discharged because he was unreasonably ordered to undergo a drug test under false pretenses due to the retaliation and discrimination described herein above.

36. Plaintiff acted reasonably in refusing to undergo the drug test under the circumstances described herein.

37. As a result of defendant's and its agents' actions, plaintiff lost his job due to retaliation and discrimination as described herein above.

38. Defendant and its agents undertook a course of conduct toward plaintiff and caused him to be constructively discharged in violation of Title VII and the ADA.

39. Defendant's agents acted against plaintiff in a bigoted, willful, and malicious manner.

40. Plaintiff was subjected to humiliation, embarrassment, and mental anguish as a result of the conduct of defendant and its agents.

41. Plaintiff seeks lost pay, benefits, lost future pay, compensatory damages for pain and suffering, punitive damages, attorneys' fees and costs.

42. Defendant is responsible for the actions of its agents.

## COUNT 1—RACIAL DISCRIMINATION

43. Plaintiff repeats paragraphs 1-42 as if more fully set forth herein.

44. By and through its conduct, Defendant violated Title VII by intentionally discriminating against plaintiff, treating him disparately, and terminating or constructively discharging his employment either in whole or in substantial part because he is Black.

WHEREFORE, Plaintiff demands judgment on Count 1 against defendant and damages in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages,

costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

## COUNT 2—RETALIATION

45. Plaintiff repeats paragraphs 1-44 as if more fully set forth herein.

46. By and through its conduct, Defendant violated Title VII by intentionally retaliating against plaintiff because he made a good faith complaint of discrimination.

WHEREFORE, Plaintiff demands judgment on Count 2 against defendant and damages in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

COUNT 3— DISABILITY DISCRIMINATION

47. Plaintiff repeats paragraphs 1-46 as if more fully set forth herein.

48. By and through its conduct, Defendant violated the ADA by intentionally discriminating against plaintiff because he was perceived to be disabled.

WHEREFORE, Plaintiff demands judgment on Count 3 against defendant and damages in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, and such other relief as the Court deems just and fair.

Date:  September 16, 2021

/s/ Samuel A. Dion
_____
Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com (email)
Attorneys for Plaintiff